NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DLR HOLDING COMPANY, a Delaware corporation;
and DLR GROUP, INC., an Arizona corporation,
*Plaintiffs/Appellants*,

*v.*

THOMAS P. O'NEIL, an individual,
*Defendant/Appellee*.

No. 1 CA-CV 15-0806
FILED 5-9-2017

Appeal from the Superior Court in Maricopa County
No. CV2015-010130
The Honorable Christopher T. Whitten, Judge

**APPEAL DISMISSED AND REMANDED**

COUNSEL

Snell & Wilmer, L.L.P., Phoenix
By Joshua Woodard
*Counsel for Plaintiffs/Appellants*

Jennings, Haug & Cunningham, L.L.P., Phoenix
By D. Kim Lough, Robert J. Lamb
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill[1] delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

---

**G E M M I L L**, Judge:

**¶1**         DLR Holding Company ("DLR Group") appeals from the trial court's denial of its application for a preliminary injunction. Because this appeal seeks an advisory opinion on a moot issue, we dismiss the appeal and remand to the trial court for further proceedings.

**BACKGROUND**

**¶2**         Thomas O'Neil is an architect who was employed by DLR Group from 1989 until July 2015. DLR Group offers architecture and engineering services to its clients with a "core area of expertise . . . organized around K-12 education, hospitality, retail/mixed use, workplace, higher education, justice/civic, and sports design." During O'Neil's employment with DLR Group, the parties executed three agreements that include nonsolicitation provisions. The three documents are: (1) a 1994 Subscription Agreement, (2) a 1999 Stockholder Agreement, and (3) a 2012 Participation Agreement. Each agreement provides that O'Neil is prohibited from "soliciting or maintaining DLR Group's clientele" for a period of one year after termination of employment. All three of the agreements contain substantially similar "Competitive Employment Restriction" clauses and in pertinent part, state:

> Participant [or Stockholder] acknowledges that through the course of his/her employment with DLR Group (the Company and its Subsidiaries), the relationships he/she has developed with DLR Group Clientele constitute a valuable, special and unique asset of the DLR Group business. Participant shall not, at any time prior to termination or for a period of one year thereafter, solicit or maintain as his/her

---

[1]         The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

clientele DLR Group clientele.[2] This restriction shall be applicable to the direct or indirect ownership, management, operation, control, employment, participation in, or connection in any manner with the ownership, management, operation, employment, or control of any business similar to the type of business conducted by DLR Group at the time of termination of this Agreement.

**¶3** "DLR Group Clientele" is defined only within the 2012 Participation Agreement, as follows:

> *DLR Group Clientele* means any client and prospective client of DLR Group who in the one year preceding Participant's termination of employment in any way received services from DLR Group by, through, or in connection with the work product of Participant. *Services* shall include all services for which DLR Group are entitled to receive compensation and all other business dealings, including the marketing and promotion of DLR Group services to prospective clients.

**¶4** DLR Group alleges that it "requires all of its key personnel who are offered ownership and incentive compensation opportunities to sign restrictive covenants prohibiting the solicitation of DLR Group clientele." It further asserts O'Neil has violated the three agreements by contacting and socializing with DLR Group clientele within the prohibited time period. O'Neil denies breaching the agreements.

**¶5** On August 17, 2015, DLR Group filed a complaint against O'Neil, along with an application for temporary restraining order and preliminary injunctive relief, seeking to enforce the nonsolicitation provisions. The complaint also alleged: (1) breach of contract, (2) misappropriation of confidential and proprietary information, (3) breach of duty of loyalty, and (4) unfair competition. DLR Group focused its memorandum in support of its application for a preliminary injunction on the "irreparable harm" it would suffer "unless injunctive relief is issued." O'Neil countered with an assertion that DLR Group's "on-going efforts to restrain" competition were unlawful in light of Arizona's Procurement Code, Arizona Revised Statutes ("A.R.S.") sections 41-2501 *et seq.* The court scheduled an initial hearing for August 21, 2015, less than one week after DLR Group filed the complaint. Rather than conduct an evidentiary

---

[2] In the 1999 Stockholder Agreement, it appears O'Neil crossed out the remaining portion of this restriction and initialed the paragraph.

hearing, however, the court ordered supplemental briefing on the enforceability of the nonsolicitation provisions in the agreements. The parties submitted supplemental briefing on September 8, 2015. Three days later, the court ruled that the nonsolicitation provisions contravene public policy and are unenforceable in the context of public contracting. The order denying DLR Group's application for a preliminary injunction was signed on October 15, 2015.

¶6         DLR Group timely appealed the order denying the preliminary injunction and asks us to consider "[w]hether the trial court abused its discretion in finding that professionals who work for companies that submit bids to the State under Arizona's Procurement Code cannot, as a matter of law, be subject to contractual nonsolicitation provisions." O'Neil frames the questions on appeal as three separate issues:

> Can DLR seek by private agreement to limit competition for taxpayer-funded public works design projects by prohibiting otherwise qualified bidders from competing for those contracts?
>
> Does the public policy of the State of Arizona encourage full, free and unqualified bidding for public works in order to maximize the taxpayers' ability to receive the best services for tax dollars?
>
> Does DLR have a protectable interest in public entity clients that secure design services by qualification-based public bidding?

¶7         We have jurisdiction in accordance with A.R.S. §§ 12-120.21(A)(1) and -2101(A)(5)(b) to review whether the trial court abused its discretion by denying DLR Group's application for preliminary injunction, but when an appeal seeks an advisory opinion, we decline to make such a ruling. *See Progressive Specialty Ins. Co. v. Farmers Ins. Co. of Ariz.*, 143 Ariz. 547, 548 (App. 1985); *see also State v. Bernini*, 220 Ariz. 536, 539, ¶ 10 (App. 2009).

**ANALYSIS**

¶8         This appeal arises from the initial stages of the litigation. The verified complaint was filed less than one month before the court issued the challenged ruling. The parties have not begun discovery and the court has not conducted an evidentiary hearing. O'Neil moved to dismiss this appeal as moot due to the passage of time because the one-year duration of the

nonsolicitation provisions has now expired. In response, DLR Group asked this court to either determine the issues are not moot, or exercise our discretion to address the issues raised on appeal, even if moot, because they "implicate[ ] an important public policy" and are "capable of repetition but evading review."

**¶9**　　　　A separate panel of this court (the motions panel) denied O'Neil's motion to dismiss the appeal. The current panel accords substantial deference to the rulings of the motions panel but is not bound by the motion panel's denial of the motion to dismiss based on mootness. *See State ex rel. Brnovich v. Culver*, 240 Ariz. 18, 20, ¶ 4 n.4 (App. 2016) ("We are not bound, however, by the decisions of the motions panel."); *Tripati v. Forwith*, 223 Ariz. 81, 84, ¶ 12 (App. 2009) (disagreeing with motions panel). Before oral argument in this appeal, we notified the parties that we were, *sua sponte*, considering whether this appeal is moot, and the issues of mootness and advisory opinions were addressed at argument. Exercising our discretion and based on the record, we conclude the issues raised on appeal are requests for an advisory opinion on a moot issue without a full factual record, and we therefore must dismiss the appeal.

**¶10**　　　　As a matter of judicial restraint, we generally do not address moot issues or issue advisory opinions. *Dunwell v. Univ. of Ariz.*, 134 Ariz. 504, 507 (App. 1982) (recognizing, absent the presence of a discretionary exception, "[i]t has long been the rule of this state that the appellate court is not empowered to decide moot questions or abstract propositions, or declare, for the sake of future cases, principles or rules of law which cannot affect the result of the instant issue."). An appellate court should not give advisory opinions or decide issues unless it is required to do so in order to dispose of the appeal under consideration. *Progressive Specialty Ins. Co.*, 143 Ariz. at 548.

**¶11**　　　　In this case, the contractual one-year period for nonsolicitation expired on or around July 24, 2016 and O'Neil moved this court to dismiss the appeal as moot due to the passage of time. DLR Group argues that a live controversy still exists because this court's resolution of the issue presented on appeal will determine: (1) whether it can seek damages for breach of contract and (2) whether it may request an extension of the restriction period using the theory of equitable tolling.

**¶12**　　　　We disagree with DLR Group's characterization of how this appeal will affect the outcome of the case, in light of the narrow issue properly before this court. Further, because the trial court did not consolidate the preliminary injunction hearing with a final trial on the

merits, the findings and conclusion it reached—that the nonsolicitation provisions "will not be enforced"—are not binding at the final trial. *See Powell–Cerkoney v. TCR–Montana Ranch Joint Venture, II*, 176 Ariz. 275, 280-81 (App. 1993) ("Under Rule 65(a), the trial court may not reach a final decision on the merits in a preliminary injunction hearing unless the hearing has been properly consolidated with a trial on the merits."). Furthermore, the trial court's legal conclusion that the restrictions are not enforceable does not constitute a final ruling or the law of the case. *See Powell–Cerkoney*, 176 Ariz. at 280 ("legal conclusions reached at the preliminary injunction phase of litigation do not constitute law of the case").

¶13 This appeal arises from an interlocutory ruling denying a preliminary injunction. At this early juncture, the parties cannot agree as to what the issues are or how the trial court's ruling will affect the remainder of the case. During oral argument in this court, the parties presented interpretations and potential applications of the nonsolicitation provisions that may differ from the arguments made to the trial court. For example, the parties may now agree that O'Neil's current employer, Orcutt Winslow, may include O'Neil's name in bids for public building projects without violating the nonsolicitation provisions. At the yet-to-be-conducted permanent injunction trial, additional facts may be developed and the trial court may further consider its legal conclusion regarding the enforceability of the provisions. *See id.* (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2nd Cir. 1953)). Because the trial court's legal conclusion does not constitute a final ruling or the law of the case, we are disinclined to substitute an advisory opinion for a final determination of law properly reserved for the trial court upon a full record.

¶14 DLR Group further asserts that the issue presented—whether professionals who work for companies that submit bids to State and local governmental entities under Arizona's Procurement Code can be subject to contractual nonsolicitation provisions—implicates an important public policy issue and this court should therefore exercise its discretion to adjudicate this appeal. The "issue of great public importance" exception to mootness usually involves an issue that will have broad public impact beyond resolution of the specific case. *Cardoso v. Soldo*, 230 Ariz. 614, 617, ¶ 6 (App. 2012) (*citing Bank of New York Mellon v. De Meo*, 227 Ariz. 192, 194, ¶ 8 (App. 2011)). Because of the procedural posture of this case, however, any substantive review of this appeal is necessarily limited to whether the trial court abused its discretion in denying a preliminary injunction based on a very sparse record, and in the absence of an evidentiary hearing. DLR Group's issue presented will presumably be reviewable upon final

resolution of the merits; but the narrow, interlocutory ruling before us at this time is not the type of significant public issue that typically triggers a discretionary exception to the mootness doctrine.

¶15　　　　Similarly, DLR Group contends we should address the enforceability of the restrictions at this time because the "dispute with O'Neil regarding his nonsolicitation restriction is capable of repetition with . . . similarly-situated employees." But the enforceability issue in this dispute may be fully presented on appeal after a final ruling regarding a permanent injunction. And if litigation ensues regarding other former or current employees of DLR Group, additional rulings will likely be appealable to this court. Therefore, the public policy-enforceability issue does not qualify for a discretionary exception for an issue capable of repetition yet evading review.

¶16　　　　To summarize, the narrow issue properly presented on appeal is whether the trial court abused its discretion in denying a preliminary injunction. DLR Group sought the preliminary injunction to enforce one-year nonsolicitation provisions. Now that more than one year has passed, affirmance or reversal of the trial court's preliminary injunction ruling would constitute an advisory opinion on a moot issue. As an exercise of judicial restraint, we decline to apply a discretionary exception; therefore, we dismiss this appeal as moot.

## ATTORNEYS' FEES

¶17　　　　Both parties request their attorneys' fees and costs on appeal pursuant to ARCAP 21 and A.R.S. §§ 12-341.01 and -342. In our discretion, we decline to award either party its attorneys' fees; the prevailing party may seek fees on appeal from the trial court at the end of the proceedings. We will grant O'Neil's taxable costs on appeal upon his compliance with ARCAP 21.

## CONCLUSION

**¶18** For these reasons, we dismiss this appeal and remand to the trial court for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED: AA